It please the court. I'm Travis Dye representing State Farm Mutual Automobile Insurance Company in this appeal. This appeal involves two primary issues, one procedural and one substantive. I'd like to briefly address the procedural issue, the pleading of attorney's fees under Rule 9G of the Federal Rules of Civil Procedure, and then move on to a discussion of the District Court's extension of Montana's insurance exception to the American Rule of Attorney's Fees. One of the fundamental purposes underlying the Federal Rules of Civil Procedure is that a defendant is entitled to notice of the claims being made against it. Rule 8A requires a party to make a demand for relief it's seeking, and Rule 9G expands upon that requirement by requiring that items of special damages be specifically stated in the complaint. Special damages are those that are – that a defendant is generally not to expect from the allegations being made against it. While this Court has not weighed in on the issue directly, several courts have determined that attorney's fees are items of special damages under Rule 9G that must be pleaded specifically, and the consequence of failing to do so is the claim is waived. Well, if they're part of a contract, for example, it seems quite obvious that that rule would make sense. It – when they're not, then – and they're founded in sort of general principles of equity, why should they be pled, especially? They're not proved at trial. You have an obligation to take part in it. I don't know. Mr. Erdman? Mr. Erdman would have no obligation to prove the amount of attorney's entitlement or amount at trial. In this case, that's correct. It wasn't – it wasn't something that would have to be proved at trial. However, it goes back to the notice requirements of – You have an opportunity under the rule for discovery and for notice, I mean, for hearing, and you can squawk all you want, can't you? Under Rule 54d. But the difference is, in that case, the notice is given after settlement, which is what happened here, or in another case, after judgment. The purpose of the rules, the purpose of Rule 8a and Rule 9g, are that a defendant is entitled to notice of all the claims against it. Now, in some – with some damages, that can be general, special damages, and then you can get into discovery. What happened in this case was the claim for fees was not included in the complaint. It was not included in the preliminary pretrial statement. It was not included in the initial disclosures. There was a very specific claim for relief, $150,000 less amounts paid. Attorney's fees were never mentioned until the eve of trial. That was the first time they were ever mentioned as a particular – or as a claim in this case. State Farm never had noticed that that would – would be something that was sought. Now, we did have a procedure after settlement to go through and to contest the fees, but what we didn't have the opportunity to do at any point was factor that into the case, was to challenge it beforehand, to challenge it through a motion for summary judgment. I'm sorry? What difference does that make? It's – what it does is it creates a rule under the civil – the rules of civil procedure that attorneys' fees are treated differently. It's – But they are. I mean, they are even in statutory cases. I mean, you wrestle with the amount and entitlement that is prevailing for any statutes way after the fact and way collateral to the proceeding. I mean, what's the – what's the problem with that as a practical matter? The – as a practical matter, the problem is a defendant or a plaintiff for that matter – and I don't want to just confine this to a defendant – is entitled to notice of the relief that is being sought in the complaint. And what Rule 54d does is provides a procedure for determination of those fees, a standardized procedure for the court to determine the amount of fees. What Rule 54d doesn't do is allow a fee claim that was never brought, that was never mentioned to be brought at the last minute. And that goes against what the rules of civil procedure are all about, which is notice. But regardless of the pleading issue and regardless of whether that fee claim was properly The fact remains that Mr. Reardon is not entitled to recover an attorney's fees under Montana law. Montana does not allow an insured in a value dispute to recover fees. Well, the – geez, I'm having – my tongue is not cooperating today. The Montana Supreme Court has never explicitly said that.  My understanding is that the – in the lower courts, they're split on this question. The – So therefore, my question to you is, why – and I have the same question of Mr. Reardon's counsel. Why shouldn't we certify the question to the Montana Supreme Court and let them tell us what they want the rule in Montana to be? And, Your Honor, we have asked – we have asked them. We have asked them whether you asked for it possibly or not. But in my head, it seems to me an appropriate avenue. And, Your Honor, I believe it's correct. And it's our position that this is an exception. The insurance exception to the American rule of attorney's fees is just that. It's an exception. Exceptions are intended to be limited unless they're expressly expanded. In this case, we don't have anything from the Montana Supreme Court. They certainly have not expressly expanded the exception to apply beyond cases involving the duty to indemnify or the duty to defend. They have never ruled on a value dispute. Well, they never ruled on uninsured motorists. Uninsured motorists or any sort of value dispute. I don't understand what you mean by value dispute. I mean, there are lots of value disputes. Where the dispute is over the value of the claim, the amount of damages, causation issues, rather than a legal issue such as the duty to defend or the duty to indemnify. In those cases, it's a legal determination. It's a question of law under Montana law as to whether a duty to defend exists or whether a duty to indemnify exists. So essentially a coverage dispute. Those are legal determinations. The Court's going to look at the policy language, at the facts, apply that policy as to whether there is coverage or potentially coverage, and therefore a duty to defend or a duty to indemnify. The value dispute is the vast majority of cases, which is there's a claim for damages. It's akin to a lawsuit between two individuals. There's a claim for damages, and the dispute is over the amount of damages, whether the person's entitled to recover anything. In this case, it was is he entitled to recover more than had already been paid. So that's what I mean by a value dispute. It's a factual determination. It's a question that needs to be decided by the fact finder, whether that's the court or the jury. There's no formula. We had no formula to go by to say Mr. Reardon is entitled to, based on these injuries, we multiply this by this and we get a number. Had this case been tried, had 10 different juries watched it at the same time, we likely would have got 10 different numbers as the amount of damages he's entitled to receive. So I guess it was a long-winded way of explaining what I meant by a value dispute. Let me ask you a question. What's the difference between the duty to indemnify and the situation that we have here where the claimant contracts with your company for uninsured motorist coverage? The difference, Your Honor, is that a duty to indemnify would be a situation such as under a liability policy where you have a judgment or a settlement against somebody. Don't you have the same thing here? Somebody buys a policy, uninsured motorist coverage, and then the uninsured motorist coverage stands in the place of the uninsured motorist, right? Correct. Yeah. And so you have a claim against the uninsured motorist, but you can't collect it. So you buy this insurance from your company to see to it that up to the limits of the policy that that claim can be paid. So I don't see the difference between indemnity and uninsured motorist coverage. The difference in a company... ...stand in the place of the insurance that the legal minimum should have been there. If it's over and above that, then you still pay. So, and then you, you know, in a sense, since this is your insurer, maybe there's some special duty or fiduciary duty that comes into play here. And, you know, insurance companies, they like to hold back, right? They like to negotiate. They like to do all those things. And they like to, you know, many times wait until they're on the courthouse steps before they get serious about negotiating. In the meantime, the client has got to go out there and hire an attorney to collect on its own policy. And, Your Honor, let me, I'd like to, I'd like to respond to that. And then you know that Montana has exceptions to the so-called American rule. And this issue has come up in the past, I think, in the Montana district court, right? It's come up twice and there's a split, or I'm sorry, it's come up before and there is a split, Your Honor. In Montana. In Montana, on the district courts. The difference between. You're talking about the state district court. Correct. The difference between the duty to defend or indemnify in this situation versus your run of the mill or your liability policy is, had this been a situation where Mr. Reardon had obtained a judgment against the underinsured motorist, Mr. Gottlich, we'd probably be having a different discussion here because then we'd have a number. We don't know what his damages are because he settled with the underlying carrier for the policy limits. He claimed he had more damages. But we didn't know what those were. That's where the factual dispute comes in. And that's where the insurance company stands in the shoes of the tortfeasor for determining the amount of damages. So it's. You mean to tell me you had no way of getting this information from Reardon? He makes allegations. He makes claims. But then there's. He had to come up with proof. That's correct. And that's where we get into the next point, Your Honor, which is this case was drastically different. The case that was settled was drastically different than the case that was filed. Mr. Reardon wasn't forced by State Farm to hire counsel. Mr. Reardon hired counsel. And this is in the record. Mr. Reardon hired counsel shortly after the accident. He hired counsel shortly after the accident to pursue his claims. So nothing that State Farm did made him hire counsel. State Farm approximately a year later began advance paying. They accepted coverage under the policy. You want him to negotiate straight with State Farm? I'm not. I'm not. There's no criticism of his decision to hire counsel. But, Your Honor, at least what I thought I heard in your question was that insureds are forced to hire counsel to pursue claims. I was trying to clarify that there's nothing that State Farm did. And Mr. Reardon admitted this on the record. There's nothing that State Farm did to require him to hire counsel. That was a decision he made on his own before he ever had any dealings with State Farm. That makes good sense. But, again, yes. And there's. We're not being critical of that. But I'm not being critical of that. But the other thing is that this case drastically changed from the time it was filed. Mr. Reardon had stopped treating. There were negotiations. Mr. Reardon had stopped treating long before suit was filed. After suit was filed, he starts treating again with a new surgeon. The time he had his surgery, approximately 13 months, 14 months before he filed suit, they went in. They did arthroscopic surgery. The surgeon found no tears of the labrum. The surgery he has or the surgeon he sees after suit's filed finds there are labral tears. Mr. Reardon testified at his deposition that the reason he needed a second surgery was because of a torn labrum. So we have these records that conflict on their face, one saying no labral tears, new records with new treatment saying torn labrum, Mr. Reardon saying that's why I need surgery. In December of 2007, when Dr. Stainer was deposed by State Farm, he says, well, it's really more of an instability issue. That's why he needs the surgery. Dr. Stainer related that to the accident. That was not in his records. That was not previously disclosed to State Farm. We found that out by taking his deposition. We were not able to do that beforehand because suit had been filed. We can't, under Montana law, an insurance company or any defendant, for that matter, can't just call up the doctor and say, hey, I've got some questions. What we had to do there is go through the discovery process. The point I want to make, too, is that the district court in this case, the language it relies upon in Brewer, is taken out of context of the case, of the issues of the case, the facts of the case, the history of Montana's insurance exception. An exception, by definition, is supposed to be limited unless expressly extended. That has not happened in the case. And what we would ask you to do is reverse the district court or alternatively certify this to the Montana Supreme Court so the court that created the exception can determine what exactly it meant. Thank you. All right. Let's go here from the other side. May it please the Court. My name is Justin Stern, and I represent Mr. Reardon in this matter. I'd like to address, start by saying that this Court should affirm on four grounds. First, the district court correctly applied Rule 54. Second, the court correctly determined that the insurance exception to the American Rule as articulated in Brewer applied. Third, that it did not clearly err in determining that Mr. Reardon's attorney's fees were $30,759. And fourth, that it did not abuse its discretion when it denied State Farm's motion to certify the questions to the Montana Supreme Court. This Court should also deny State Farm's motions that are pending before it with regard to certification and with regard to State Farm's motion to strike portions of Mr. Reardon's excerpts of record. First, with regard to Rule 54d-2, Mr. Reardon timely filed his motion for attorney's fees pursuant to Rule 54 because attorney's fees were not part of the substantive law and were rather they weren't a substantive element of damages that needed to be proven at trial. In its brief, State Farm admits that this was not a jury issue, that the Court was going to make this issue. Second, the district court correctly concluded that the insurance exception to the American Rule applies when an insurer forces an insured to sue to get the full benefit of the insurance agreement. Brewer, which was decided in 2003, applied to all first-party claims. In response to Your Honor's question regarding how is this different or similar to a duty to indemnify case, it's exactly the same in this sense. Both are first-party cases. Both are based on the contractual relationship between the insurer and its insured. Both are based on the unequal bargaining power between the insured and the insured. And both are based on the idea that the insured paid a premium and has an expectation that he should get the benefit of the bargain. And finally, both are based on, under Montana law, the court has held that there's a fiduciary relationship between an insured and its insurer. The district court also did not err in determining, did not commit clear error in determining that Mr. Reardon was entitled to $30,559 in attorney's fees. There were, when State Farm, when Mr. Reardon filed this claim for uninsured motorist benefits, his breach of contract claim, State Farm had paid $30,586. The district court awarded no fees based on that amount. After the complaint was filed, but before the answer was filed, the district court ordered well, there was $45,414 paid, and the district court ordered attorney's fees in the amount that the attorneys spent in preparing the case. Then after the answer was filed, the district court gave Mr. Reardon his contingency fee amount, which was $25,900.      And the $74,000 was paid, was that on the eve of trial? $74,000 was paid not on the eve, but a few days before the trial. One thing I'd like to note that Mr. State Farm's attorney said was that there was a settlement. There was no settlement in this case. State Farm paid the policy limits of $150,000 days before the trial. There was never a settlement entered into. All right. I think we understand your argument. Okay. Lastly, State Farm or this Court should affirm the district court's decision to not to certify this question to the Montana Supreme Court because the law is clear. When you say the law is clear, I mean, you're depending on the Brewer case? Yes, Your Honor. And we think that it's sufficiently clear in Brewer based on those four principles that I articulated earlier, such as the contractual relationship, and that it's similar enough to a duty-to-defend case that should be applied. And in fact, the Montana Supreme Court, in its Brewer opinion, reviews its jurisprudence and the jurisprudence from several sister states. One of those cases that it reviewed was the McGreevy case, which was out of the State of Washington. And in that case, the Washington Supreme Court applied the insurance exception to the American rule to not an underinsured motorist case, but an uninsured motorist case, which is substantially similar for the purposes of this case. The Montana Supreme Court reviewed the McGreevy case, and while it didn't explicitly hold that the insurance exception to the American rule applies to an underinsured motorist case, it's with all the principles that apply in the Brewer case are applicable here. I have a couple more responses. State Farm continues to argue that this case is about value, and it only takes one sentence, I think, to understand how that's not correct. State Farm paid the policy limits before it went to trial. If State Farm had seriously believed that this case involves a question of value, it could have gone to trial, but it did not do so. State Farm argues that what happened is after State Farm had paid roughly $74,000 before the answer was filed. Once the answer was filed, that was it. There was no more, it was time to litigate this matter. And then that's the bulk of the attorney's fees that were applied. So if we go back and apply the clear language of Brewer, which is that an insurer is when an insurance company forces its insured to file a lawsuit to get the benefit of the contract, then the insured is entitled to attorney's fees. Lastly, I want to address the issues befending before this Court, which are a motion, one of the issues pending before this Court, which is State Farm's motion to strike portions of Appellate's excerpts of the record. All of the excerpts that Mr. Reardon relied upon and submitted to this Court were also submitted to the district court in his motion eliminating which was filed with the district court. There's nothing new in front of this Court that was not presented to the district court. So in summary, this Court should affirm on four grounds, that the district court correctly applied Rule 54, that the district court correctly concluded that the insurance exception to the American Rule as articulated in Brewer, and third, that the district court did not clearly err when it determined that Mr. Reardon's attorney's fees were $30,759, and four, it did not abuse its discretion when it denied State Farm's motion to certify. Thank you. Very briefly, Your Honor. One point, that the damage, that the idea of the full benefit of the contract, nobody knew what that was. We had a demand for policy limits, but even Mr. Reardon in his filings, his preliminary pretrial statement, was not able to identify his damages in the preliminary pretrial statement and the initial disclosures. He listed eight items of damages. Only two had numbers by them. That added up to approximately $85,000. The remainder were all to be determined. Mr. Reardon's counsel conceded at the hearing on fees that this was a case that involved complex issues of causation. And even Mr. Reardon and his counsel, at the time the suit was filed, said that because of the new treatment, they were not in a position to negotiate. State Farm just had offered $76,000 total. When that letter came through, they just paid the remaining $45,000, and that's where we got to the $76,000. It was Mr. Reardon's counsel who said that they were not in a position to negotiate. Thank you. Thank you. All right. This matter is submitted, and we'll recess until 9 a.m. tomorrow morning.
judges: Pregerson, Rymer, Tashima